# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your Affiant, Daniel Carter, a Special Agent with the Drug Enforcement Administration ("DEA"), duly sworn, does state the following:

## INTRODUCTION

This Affidavit is offered in support of a Criminal Complaint against TONIE NENO MITCHELL ("MITCHELL") for one count of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), on or about July 29, 2024.

## AGENT'S BACKGROUND

1. Affiant is currently employed as a Special Agent with the Drug Enforcement Administration ("DEA") assigned to the Cleveland District Office ("CDO") Heroin Enforcement Group ("HEG") and has been so since July 2024. Prior to my employment with the DEA, I was employed as a Federal Police Officer with the United States Secret Service from December of 2020 to January of 2024. I have completed a 17-week DEA Basic Agent Training course in Quantico, Virginia. As part of the BAT course, I have received training in narcotic investigations, narcotic interdiction, identification of narcotics, search and seizure issues, preparing search warrants, surveillance, techniques, preparation and execution of narcotic search warrants, debriefing of defendants, witnesses, and cooperating sources. I am also a graduate of the 17-week Federal Law Enforcement Training Center Uniform Police Basic Training Academy in Artesia, New Mexico as well as the 17-week Secret Service Uniform Division Training Course in Beltsville, Maryland. I attended the Xavier University in Cincinnati, Ohio and graduated with a Bachelor's Degree of Science in Criminal Justice.

2. I have been involved in numerous narcotics-related arrests, have executed search warrants, seized narcotics or dangerous drugs. Based on the above experience, I am familiar with the *modus*

1

*operandi* of persons involved in the illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances. I am aware that persons involved in the illicit distribution of controlled substances nearly always attempt to conceal their identities and the locations at which drug transactions take place. I know that individuals engaged in organized drug distribution and sales often maintain records of those sales and also maintain extensive contacts with persons from whom they receive drugs and to whom they distribute drugs. It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities, and to divide their illegal proceeds.

3. I have also received training in the identification of narcotics, search and seizure issues, and preparing search warrants. I have had experience in surveillance techniques, investigating narcotic and criminal cases, including the preparation and execution of narcotic and other criminal case search warrants and debriefing of defendants, witnesses, cooperating sources and other persons who have personal knowledge of narcotics and criminal violations. I have been involved in narcotic related arrests and executed search warrants, which resulted in the seizure of narcotics, and supervised the activities of informants who have provided information and assistance resulting in narcotic purchases. I have questioned suspects, debriefed informants and have conferred with other officers and prosecuting attorneys, and as a result have gained experience in investigating drug trafficking organizations.

4. On a regular basis, I review law enforcement bulletins and intelligence reports regarding narcotic trafficking and smuggling, and remain in communication with counterparts in order to keep up to date with modern techniques and trends used by narcotic traffickers in the domestic and international arena.

## FACTS SUPPORTING PROBABLE CAUSE

5. In early April of 2024, DEA Cleveland began an investigation into the drug trafficking and money laundering activity of TONIE NENO MITCHELL. Among other information, on April 3,

2024, law enforcement in Cleveland stopped a Nissan Rogue occupied by MITCHELL (passenger) and another male (driver). Law enforcement identified both MITCHELL and the male driver as Jamaican nationals. A police K9 alerted to the odor of narcotics coming from the Nissan. The Nissan was searched, and law enforcement found a Home Depot medium box in the rear seat, which contained approximately $350,795 in U.S. Currency, suspected drug proceeds. MITCHELL and the driver both denied ownership of the cash. The cash was seized as suspected drug proceeds. MITCHELL and the driver were both released without charges.

6. The investigation into MITCHELL continued and resulted in "ping" warrants for precise location information on some of MITCHELL's cell phones. Based on the "ping" warrant data, in addition to physical surveillance and other location information, DEA investigators identified MITCHELL's residence as a duplex at 1056 East 171st Street, Cleveland, Ohio, 44119. DEA investigators were able to further identify MITCHELL's living unit within the duplex as the unit accessed through the southern-most front door, based on physical surveillance of MITCHELL coming in and out of that particular door.

7. On July 19, 2024, DEA investigators obtained a federal search warrant for MITCHELL's living unit at 1056 East 171st Street (the unit accessed through the southern-most front door). The search warrant also included authorization to search any common areas accessible through that living unit (such as a basement laundry room).

8. On July 29, 2024, members of DEA Cleveland District Office executed the federal search warrant for MITCHELL's residence at 1056 East 171st Street, Cleveland, Ohio 44119 (the living unit through the southern-most front door). At approximately 6:18 a.m., members of the DEA Cleveland District Office knocked on the southern-most front door and announced their presence. DEA Cleveland then made entry through the southern-most front door, which led to the downstairs living unit of the duplex. MITCHELL fled from his downstairs living unit into the basement of the residence.

3

MITCHELL was then apprehended in the basement, and the search of MITCHELL's downstairs living unit was conducted.

9. MITCHELL's downstairs living unit consisted of a living room common area, two bedrooms, a bathroom, a dining room, and a kitchen. An adult female (also a Jamaican national) was also located in MITCHELL's downstairs living unit. In summary, the female stated that she had recently arrived at the house and was sleeping on an air mattress in the living room.

10. During the search of MITCHELL's living unit, investigators seized the following items:

    a. (1) Ruger P94 9mm handgun with a loaded magazine (S/N: 315-23087), found in the nightstand MITCHELL's bedroom (As explained later in this affidavit, MITCHELL was subsequently interviewed and admitted this was his bedroom. Also, a Citizen's Bank checkbook with MITCHELL's name and an Amazon package with MITCHELL's name were found in this bedroom, further corroborating it was MITCHELL's bedroom).

    b. (1) Cherokee BUL 9mm handgun with a loaded magazine (S/N: CP-23242), found in the second bedroom.

    c. (6) Boxes of 50 rounds of 9mm ammunition, found in the nightstand next to the bed in MITCHELL's bedroom.

    d. (2) Clear plastic bags of green plant material (suspected marijuana), found in the cabinet of the dining room.

    e. (1) Clear plastic bag of unknown liquid (suspected MDMA), found in the living room.

    f. (1) Clear plastic bag of a black tar substance (suspected heroin), found in the kitchen.

    g. (70) Black and clear plastic vacuum sealed bags containing multiple colors of a rock crystal substance with a gross weight of 70 kilograms, located in the living room closet (the substance field-tested positive for MDMA, a Schedule I controlled substance),

found in two black duffel bags and a roller luggage bag located in the living room closet. Photos of those drugs from the living room closet are copied below:





h. (1) Ledger notebook, located in the nightstand in MITCHELL's bedroom, which appeared to document drug prices and large quantities of drug money that was owed or received. For example, one page of the ledger contained handwritten notes saying, "Ben D Boy 1 ½ = ½ for 8,500" . . . "1 for 16,500 = 25,000" . . . "Need to take 191,000 for it" . . . "Pick up 130K for CB" . . . "I need to pay uncle 16,000 for 1[.]" Based on my training and experience, this appears to document prices for large quantities of drugs. A photo of that page of the ledger is copied below.

6

> 1st BRO
> Pay 400 to send it
> 810
>
> ME = To Pos
> 15,00 + 60 = 1560
>
> Bad Boy 1½ = ½ for 8,500
> 1 for 16,500 = 25,000  # NEED to tak
> Pick up 130K for R CB   1,000 for it
>
> fAm      1H DBRO   SD    Bm
> 6300  -  1450   - 2400 - 1400
> = 1050    ↓
>          6000 Pay 400 to send
>
> Uncle
> I NEED to Pay uncle 16,000 for 1

i. Undetermined amount of U.S. currency; found in a backpack located in MITCHELL's bedroom closet. The money was rubber-banded together, which is consistent with how drug traffickers package drug proceeds. A photo of that U.S. currency is copied below.

7



j. Multiple receipts of money transfers, including receipts indicating money transfers made to Jamaica, found in the living room.

k. (9) cell phones. (8) of those cell phones were found on the nightstand in MITCHELL's bedroom. The remaining cell phone was determined to belong to the adult female in the residence.

11. While at the residence, MITCHELL was advised of his *Miranda* rights and agreed to speak with investigators. MITCHELL also consented to a search of five (5) of the eight (8) cell phones found on his nightstand, and provided the passcodes for those phones. In summary, MITCHELL stated that he was from Jamaica, and had entered the United States in approximately August 2023. MITCHELL stated that he shared the downstairs living unit with another Jamaican male (the driver of the vehicle in the April 3, 2024, traffic stop discussed above, where approximately $350,795 in suspected drug cash was seized). MITCHELL stated he believed his roommate had been recently arrested in Pennsylvania. MITCHELL identified which bedroom that was his. (As indicated above, MITCHELL's bedroom was

8

the one where the Ruger pistol, the drug / money ledger, the (8) cell phones, and the U.S. currency were found).

12. MITCHELL stated that the bags of drugs in the living room closet were methamphetamine (though as noted above, a field test of the substances in those bags returned a positive result for MDMA, a Schedule I controlled substance; not methamphetamine). MITCHELL claimed that someone else had left those bags at the house several months earlier. MITCHELL further claimed that a few weeks prior to the search warrant, the person who left the bags said they were sending someone to pick them up, but that person never came.

13. Based on my training and experience, I believe that MITCHELL possessed the drugs seized from the living unit (including the bags of suspected MDMA in the living room closet) with intent to distribute. In particular, the quantity of those drugs (gross weight of approximately 70 kilograms) is far larger than any person would typically possess for personal use. Additionally, the presence of the drug / money ledger, rubber-banded cash, cell phones, and firearms in MITCHELL's bedroom (in combination with the earlier seizure of approximately $350,795 from MITCHELL and his suspected roommate in April 2024), corroborates that MITCHELL is involved in higher level drug trafficking and money payments.[1]

## CONCLUSION

For the foregoing reasons, your affiant submits there is probable cause to issue this criminal complaint against TONIE NENO MITCHELL for one count of Possession with Intent to Distribute a

---

[1] According to Customs and Border Patrol Officer Brian Darr, who is also a DEA Task Force Officer, MITCHELL is present in the United States illegally. Your affiant notes that MITCHELL's possession of the Ruger pistol and ammunition in his bedroom is therefore likely also a violation of 18 U.S.C. § 922(g)(5), which provides that "[i]t shall be unlawful for any person . . . who, being an alien — is illegally or unlawfully in the United States . . . to possess in or affecting interstate commerce, any firearm or ammunition[.]"

Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), on or about July 29, 2024.

Daniel Carter
Special Agent
Drug Enforcement Administration



This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Fed. R. Crim. P. 4.1, 41(d)(3), this 30th day of July, 2024. at 8:55 a.m.

Jennifer Dowdell Armstrong
UNITED STATES MAGISTRATE JUDGE

10